# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT



No. 17-60285

UNITED STATES OF AMERICA,

> Plaintiff–Appellee,

v.

MARK RANDALL JONES,

> Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2020

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:09-CR-96-1

Before OWEN, Chief Judge, and SOUTHWICK and HIGGINSON, Circuit Judges.

PER CURIAM:*

Mark Randall Jones appeals from his convictions for conspiracy to possess with intent to distribute a mixture or substance containing cocaine hydrochloride (cocaine) and possession with intent to distribute cocaine. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60285

**I**

On June 4, 2008, Norbert Jaworowski, a contractor hired by the United States Postal Inspection Service (USPIS), observed a man enter a Los Angeles post office carrying a large box with two smaller boxes inside of it. The man placed the two smaller boxes in the mail chute and left carrying the larger box. After observing the man's behavior, Jaworowski developed "a gut feeling that something was going on." Jaworowski watched the man leave the post office in a Chrysler Pacifica and noted the license plate. Jaworowski then retrieved the two smaller boxes (to which we will refer as the "Packages") from the mail chute. Both Packages listed "Horace Hampton" as the recipient and "Delilah Maddox, YMI Incorporated" as the sender and had Jackson, Mississippi return addresses. The delivery address on the first Package was in Clinton, Mississippi. The second package was addressed to a different delivery address in Flowood, Mississippi. Jaworowski determined from the vehicle registration for the Chrysler Pacifica that it was licensed to defendant–appellant Mark Randall Jones.

Jaworowski contacted Postal Inspector Robert Kay in Jackson, Mississippi, to report what he had witnessed and to convey his suspicions. Kay asked Jaworowski to mail the Packages to him, and Jaworowski obliged. After receiving the Packages, Kay arranged for a canine inspection within a parcel lineup. Kay and Agent Geoff Still, the canine handler, were present at the lineup. The canine alerted to the Packages.

Kay obtained a search warrant for the Packages on June 6, 2008, and opened them later that day. Each Package contained a speaker box filled with two vacuum-sealed bundles of a substance that tested positive for cocaine. The USPIS Crime Laboratory determined that each Package contained approximately two kilograms of cocaine.

No. 17-60285

Kay determined that the delivery addresses on the Packages were the addresses of two private postal stores that rented boxes for the receipt of mail. After further investigation, Kay concluded that Jones's co-defendant Pedro Phillips had rented the postal boxes to which the Packages were addressed using the alias "Horace Hampton." Kay learned that the two stores regularly received similar packages and that Phillips usually picked them up.

On June 9, 2008, Kay organized a controlled delivery of the Package sent to the rental box in Flowood. During the controlled delivery, Jones's co-defendant Derrick Beals took possession of the Package and was arrested. Following Beals's arrest, Kay learned that other packages sent to that rental box were usually taken to an apartment on Layfair Drive (Layfair Apartment). After obtaining a search warrant, agents searched the Layfair Apartment and found scales, wrappings for money, six speaker boxes "identical" to those in the Packages, and a property bag from the Madison County Jail in the name of Derrick Beals. A powdery substance on the floor of the apartment tested positive for cocaine.

Jaworowski also notified Detective Tom Logrecco of the Los Angeles County Sheriff's Department about the Packages and the Chrysler Pacifica. Logrecco discovered that the address on the Pacifica's vehicle registration was that of a postal rental box at a business called "Copies Plus." Logrecco discovered that Jones also used a postal rental box at another business called "Mail Plus." Mail seized from those two rental boxes revealed various residential, business, and storage addresses associated with Jones.

Logrecco obtained a search warrant for some of the California addresses associated with Jones on June 13, 2008. At one address, Logrecco found paperwork containing Jones's name; envelopes with the sender listed as "Mary L. Harrison, YMI, Incorporated" and a Michigan return address; another envelope with "Mary Harrison" listed as the sender and a Jackson, Mississippi

3

return address; a money counter; a "food saver heat seal machine"; and a note instructing the reader "to maintain several FedEx accounts, business addresses [and] keep money on prepaid credit." Logrecco also found a receipt from a Wal-Mart in Mississippi and a flight itinerary for Jones to travel to Jackson, Mississippi. Most importantly, Logrecco discovered ten kilograms of cocaine and unopened envelopes containing almost $400,000 in currency. Jones's fingerprints were on two of the envelopes of currency. In 2011, the cocaine seized from the Packages and the California address was destroyed pursuant to USPIS procedure.

At a second California address, Logrecco seized several speakers, two money counting machines, two scales, checks from a checking account for a business named "Supreme Enterprises," and paperwork in Jones's name. At a third California address, Logrecco recovered envelopes with "Mary Harrison" listed as the sender and Mississippi and Michigan return addresses as well as paperwork in the name of "Mark R. Jones and Supreme Enterprises." Logrecco also recovered a California driver's license with Jones's photograph and the name "Jeffrey Anderson"—the name of the addressee on certain envelopes found at the first two California locations.

## II

In October 2009, a grand jury indicted Jones on two counts. Count One charged that, from "as early as June 15, 2006 . . . to on or about June 9, 2008, in Rankin County . . . and elsewhere," Jones, Phillips, Beals, and two others conspired to possess with the intent to distribute in excess of five kilograms of cocaine. Count Two charged Jones with possessing with intent to distribute five hundred grams or more of cocaine. Jones was not arrested until September 2015.

Prior to trial, Jones moved to dismiss the indictment based on the destruction of the cocaine found in the Packages and at the California address.

No. 17-60285

Jones also filed motions to suppress all evidence gathered from the seizure of the Packages, to exclude the evidence discovered from the searches of his California addresses (California Evidence), and to exclude the evidence discovered in the Layfair Apartment (Layfair Evidence). The district court held all these motions in abeyance until trial, then denied them piecemeal as the proceedings unfolded. The district court did, however, inform the parties that it was admitting the California and Layfair Evidence "[o]ut of an abundance of caution" and it would give an instruction under Federal Rule of Evidence 404(b).

The Government presented several witnesses, including Jaworowski, who identified Jones as the sender of the Packages, and Inspector Kay, who testified about the canine identification during the parcel lineup and the destruction of the seized cocaine. Kay also testified about certain information that he had learned from Phillips. Immediately after Kay recounted what he had learned from Phillips, the district court instructed the jury that Kay's testimony had been introduced to explain the manner in which Kay conducted the investigation and should not be considered when deciding whether the Government had proved its case. The Government also introduced search warrant returns and affidavits that included statements made by Agent Still. Neither Phillips nor Still testified at trial or was made available for cross-examination before trial, and any notes that Still took during the parcel lineup were not provided to Jones.

After the conclusion of the Government's case, Jones made an oral Rule 29[1] motion for acquittal, arguing that the Government had destroyed exculpatory evidence, had presented insufficient evidence, and had constructively amended the indictment. The district court denied the motion.

---

[1] FED. R. CRIM. P. 29.

5

No. 17-60285

Jones testified in his own defense, stating that he did not send the Packages and that they were likely sent by a similar-looking individual who rented an apartment from him. Jones also explicitly stated that he was not a drug dealer and that he "ha[s] never been convicted of any felony in any state in the United States."

The district court instructed the jury prior to closing arguments. The district court denied Jones's requests to present additional testimony that Jones is a law-abiding citizen and his request for instructions on constructive possession. The district court gave a standard Rule 404(b)[2] instruction but did not specify that the instruction covered the California and Layfair Evidence. During closing arguments, the Government repeatedly referenced the California and Layfair Evidence as part of the proof that Jones committed the crimes charged in the indictment. The jury convicted Jones on both counts.

After the trial, Jones filed a written renewed motion for acquittal as well as a motion for new trial, contending that the verdict was based on insufficient evidence, that the district court erred by denying two of his requested jury instructions, and that the Government engaged in prosecutorial misconduct during its closing arguments. The district court denied both motions.

A Presentence Report (PSR) was prepared prior to sentencing. The PSR stated that the Packages each contained about two kilograms of cocaine and that approximately ten kilograms of cocaine were found at one of the California addresses associated with Jones. It also stated that approximately $400,000 that was "believed to either be proceeds from the sale of cocaine or . . . to be used to purchase cocaine" was found at the California address, "which would be the equivalent of 28.20 kilos of cocaine." The PSR noted that Phillips

---

[2] FED. R. EVID. 404(b).

No. 17-60285

claimed to have picked up thirteen mailed packages, each containing two pounds of cocaine.

Relying on the information in the PSR, the district court concluded that, under United States Sentencing Guideline § 2D1.1(a)(3), Jones's base offense level for Count One was thirty-four because Jones's criminal activity involved at least fifty kilograms but less than 150 kilograms of cocaine. The district court imposed a four-level leadership-role enhancement over Jones's objection, as well as a two-level enhancement for obstruction of justice, bringing Jones's total offense level to forty. Based on his offense level of forty and criminal history category of one, the district court determined that Jones's guidelines sentence for Count One was 292 to 365 months of imprisonment. The district court imposed a sentence of 360 months on Count One and sixty months on Count Two, to run concurrently. The district court "hasten[ed] to say that whether [it] has accurately made a determination vis-a-vis the guidelines or has not, the sentence would be the same" in light of "the gravity of this crime," "all of the dangerous and life-threatening drugs" involved, "the fact that . . . [Jones ha]d been on the lam for a long time, and all of the other facts and circumstances which the court faces." The district court entered a judgment reflecting its sentence.

Jones appeals, contending that the district court erred by (1) denying the motions to suppress the Packages, (2) denying the motions to exclude the California and Layfair Evidence, (3) denying the motions for acquittal based on insufficient evidence or a constructive amendment to the indictment, (4) denying the motion for a new trial based on the Government's closing argument, (5) declining to rule on the motions to suppress and exclude until trial, (6) denying the motion to dismiss the indictment based on the destruction of Still's notes and the seized cocaine, (7) admitting the testimonial hearsay

statements of Phillips and Still, (8) declining to give Jones's requested jury instructions, and (9) imposing an unreasonable sentence.

### III

We begin by addressing Jones's arguments for the suppression of the Packages. Jones contends that the district court erred in denying his motion to suppress because Jaworowski violated the Fourth Amendment's prohibition against unreasonable seizures when he removed the Packages from the mail chute and detained them for inspection. When reviewing a decision on a motion to suppress, we review factual findings for clear error and legal conclusions de novo.[3] We may affirm a district court's ruling on a motion to suppress based on any rationale supported by the record.[4]

The Fourth Amendment prohibits "unreasonable searches and seizures."[5] The exclusionary rule affects the Fourth Amendment's prohibition on unreasonable searches and seizures by prohibiting the introduction at trial of evidence obtained as the result of an unreasonable search or seizure as well as "other incriminating evidence derived from that primary evidence."[6] Seizures of mailed packages are reasonable, and therefore do not violate the Fourth Amendment, when based on a reasonable suspicion of criminal activity.[7]

The district court held that Jaworowski's seizure of the Packages was "justified" by the suspicious return and delivery addresses on the Packages. Jones contends that the district court erred because the Fourth Amendment

---

[3] *United States v. Roberts*, 612 F.3d 306, 309 (5th Cir. 2010) (quoting *United States v. Outlaw*, 319 F.3d 701, 704 (5th Cir. 2003)) (citing *United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003)).

[4] *Id.* (quoting *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)).

[5] U.S. CONST. amend IV.

[6] *United States v. Runyan*, 275 F.3d 449, 466 (5th Cir. 2001) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920)).

[7] *United States v. Daniel*, 982 F.2d 146, 149-50 (5th Cir. 1993).

No. 17-60285

seizure occurred when Jaworowski removed the Packages from the mail chute and Jaworowski did not read the Packages' labels—and therefore had not been exposed to the suspicious addresses—prior to removing them from the mail chute.

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."[8]  In this case, Jaworowski removed the Packages from the mail chute based on a "gut feeling," then inspected their labels.  We conclude that Jaworowski did not meaningfully interfere with any possessory interest that Jones retained in the Packages by removing them from the mail chute and inspecting their labels.  This common-sense conclusion is reflected in the United States Supreme Court's repeated admonition that "[l]etters and sealed packages . . . in the mail are as fully guarded from examination and inspection, *except as to their outward form and weight*, as if they were retained by the parties forwarding them in their own domiciles."[9]

Two cases relied on by Jones, *United States v. Daniel*[10] and *United States v. Jacobsen*,[11] do not support a different conclusion.  In *Daniel*, an American Airlines employee called Drug Enforcement Administration (DEA) investigator J.C. Sneed and reported a "suspicious" package being shipped by the airline.[12]  The employee relayed information suggesting that the package contained narcotics to Sneed, who went to the airport to investigate further.[13]

> Upon his arrival, Sneed was shown a small cardboard box addressed to "Lynn Neal c/o Dottie's Hair Design," a beauty salon

---

[8] *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).
[9] *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970) (quoting *Ex parte Jackson*, 96 U.S. 727, 733 (1877)) (emphasis added).
[10] 982 F.2d 146 (5th Cir. 1993).
[11] 466 U.S. 109 (1984).
[12] *Daniel*, 982 F.2d at 147-48.
[13] *Id.* at 148.

No. 17-60285

located in Nettleton, Mississippi; the return address was a residence in San Bernardino, California. The addresses on the box were handwritten, and the return address did not contain a zip code. Sneed also observed that all the seams in the package were securely sealed with masking tape. According to the receipt completed by the sender, the box contained "parts." Sneed shook and squeezed the box. Because the box did not rattle, Sneed questioned whether in fact it contained parts of any type. He shared the American Airlines' employee's suspicions that the package possibly contained illicit drugs.[14]

Sneed orchestrated a dog-sniff test of the package "to confirm his suspicions."[15]

We held that "Sneed's actions constituted a seizure" because "[t]he record indicate[d] that in the time leading up to the dog-sniff test, Agent Sneed exercised control over the box for approximately forty-five minutes."[16] We then proceeded to address "whether that relatively brief investigatory seizure of the package was reasonable."[17] We held that Agent Sneed had acted based on a reasonable suspicion in light of, among other things, "i) the package's size and shape, which belied a shipment of 'parts,' . . . ; ii) the fact that the package was securely taped with masking tape all along the seams; [and] iii) the fact that the labels were hand-written, even though the mailing was allegedly business-related."[18] In so holding, we relied on information that Sneed learned by "examin[ing] and inspect[ing] . . . the[] outward form and weight" of the package.[19] Implicit in our reliance on this information is the conclusion that a seizure did not occur until after Sneed finished examining and inspecting the

[14] Id.
[15] Id.
[16] Id. at 149.
[17] Id.
[18] Id. at 150.
[19] United States v. Van Leeuwen, 397 U.S. 249, 251 (1970) (quoting Ex parte Jackson, 96 U.S. 727, 733 (1877)).

No. 17-60285

outside of the package.[20]   Accordingly, *Daniel* does not establish that the examination and inspection of the outside of a package qualifies as a Fourth Amendment seizure.

The same is true of *Jacobsen*.   In *Jacobsen*, Federal Express employees contacted the DEA after discovering white powder during an examination of a damaged package.[21]   When DEA agents arrived, "[t]he package itself, which had previously been opened, remained unsealed, and the Federal Express employees . . . invited the agents to examine its contents."[22]   The Supreme Court held that, "[w]hile the agents' assertion of dominion and control over the package and its contents did constitute a 'seizure,' that seizure was not unreasonable" because, by the time the seizure occurred, "it was apparent that the tube and plastic bags contained contraband and little else."[23]   The decision in *Jacobsen*, like *Daniel*, involved a government agent taking possession of a package from a private carrier *after* being given the opportunity to examine that package.   Neither case addressed whether a USPIS officer's examination of the outside of a package entails a meaningful interference with possessory rights sufficient to qualify as a Fourth Amendment seizure.   Accordingly, neither case supports Jones's position.

Any Fourth Amendment seizure occurred after Jaworowski read the labels on the Packages, and any detention of the Packages was reasonable.   As the district court noted, aspects of the Packages' labels gave rise to a reasonable suspicion of criminal activity.   The Packages were mailed from California but had Jackson, Mississippi return addresses.   Both Packages were addressed to "Horace Hampton," but each Package was sent to a different

---

[20] *See United States v. Lara*, 638 F.2d 892, 899 (5th Cir. Unit B. Mar. 1981) (requiring "reasonable suspicion before any seizure").

[21] *United States v. Jacobsen*, 466 U.S. 109, 111 (1984).

[22] *Id.* at 121.

[23] *Id.* at 120-21 (footnote omitted).

No. 17-60285

address in a different city. We agree that the oddities in the Packages'
labeling—the fact that they were addressed to the same person at two different
addresses and were deposited in the mail by a male in California but had a
Mississippi return address with a stereotypically female name—gave rise to a
reasonable suspicion of illegal activity sufficient to justify detaining the
Packages and subjecting them to a parcel lineup. The detention of the
Packages did not violate Jones's Fourth Amendment rights, and the district
court properly denied Jones's motion to suppress.

## IV

Before trial, Jones moved to exclude the California and Layfair Evidence,
arguing that it was irrelevant, extrinsic, and inadmissible under Federal Rule
of Evidence 404(b). The district court decided the motions in an oral ruling
issued after the close of evidence and outside of the presence of the jury,
stating:

> Now, as to the California situation, you're dealing here with
> whether or not the evidence is intrinsically intertwined. These two
> situations, you have California and you have Mississippi. Is the
> evidence intrinsic, meaning should it come in to complete the story
> of the crime by proving that there was such a connection between
> the two situations that they are indeed intrinsically involved. Out
> [of] an abundance of caution, however, I'm going to allow evidence
> in under 403 [sic] wherein the jury will be allowed to consider it
> not as to the character of the defendant—and I'm going to give a
> very careful instruction regarding that—but may consider the
> evidence—this other act of evidence in terms of motive, knowledge,
> lack [of] mistake, all of the issues which apply.

Before closing arguments, the district court gave the jury the following
Rule 404(b) instruction:

> You have heard evidence of acts and actions of the defendant which
> may be similar to those charged in the indictment but which were
> committed on other occasions. You must not consider any of this
> evidence in deciding if the defendant committed the acts charged
> in the indictment. . . . However, you may consider this evidence for

12

other purposes herein below set out . . . . If you find beyond a reasonable doubt from the evidence in this case that the defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine whether the defendant had the intent necessary to commit the crime charged in the indictment or whether the defendant had the motive to do so, the opportunity to commit the crime charged in the indictment or whether the defendant acted according to a plan or preparation for the commission of a crime or whether the defendant committed the acts for which he is on trial by accident or by mistake.

We address multiple issues surrounding the California and Layfair Evidence.

## A

Jones contends that the district court erred by admitting the California and Layfair Evidence because it is extrinsic "other acts" evidence that does not meet Rule 404(b)'s requirements for admission. We disagree. The California and Layfair Evidence is evidence of the conspiracy charged in the indictment. The indictment reads:

Beginning on or about a date unknown, but as early as June 15, 2006 . . . and continuing up to on or about June 9, 2008, in Rankin County . . . and elsewhere, the defendants . . . did knowingly and willfully conspire and agree with others . . . to knowingly and intentionally possess with intent to distribute in excess of five (5) kilograms of . . . cocaine.

The indictment's description of the location of the conspiracy does not foreclose the possibility of the California Evidence being evidence of the charged conspiracy. Rankin County, Mississippi "and elsewhere" includes California. Further, a number of items found at the California addresses connect them with Rankin County, which is directly across the Pearl River from Jackson, Mississippi. Those items include envelopes with Jackson return addresses, a receipt from a Wal-Mart with a Rankin County area code, and an itinerary for a flight to Jackson in Jones's name.

No. 17-60285

The indictment's description of the duration of the conspiracy also does not foreclose the possibility that the California Evidence is evidence of the charged conspiracy.  The fact that the California Evidence was discovered on or shortly after June 13, 2008, does not mean that it could not relate to a conspiracy that occurred "up to on or about June 9, 2008."  In *United States v. Girod*, we held that evidence showing that a false statement was made four months before the date alleged in the indictment was evidence of the crime charged in the indictment.[24]  We explained that, "[i]n this Circuit, 'an allegation as to the time of the offense is not an essential element of the offense charged in the indictment and, 'within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.'"[25]

Jones contends that the California Evidence "suggested a conspiracy separate from that which was charged in the indictment."  However, there is ample evidence linking the California Evidence to Jones, the Packages, and the charged conspiracy.  At one California address, agents found approximately ten kilograms of cocaine and unopened envelopes containing approximately $400,000 in cash.  They also found an envelope with the sender listed as "Mary L. Harrison, YMI, Incorporated" and a Michigan return address and another envelope with Mary Harrison listed as the sender and a Jackson, Mississippi return address.  These envelopes provide an evidentiary link connecting that California address to the Packages themselves, which listed "Delilah Maddox, YMI Incorporated" as the sender and had Jackson,

---

[24] 646 F.3d 304, 316-17 (5th Cir. 2011).

[25] *Id.* at 316 (quoting *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970) (per curiam)); *see also United States v. Tunnell*, 667 F.2d 1182, 1186 (5th Cir. 1982) (quoting *United States v. Grapp*, 653 F.2d 189, 195 (5th Cir. 1981)) ("In this circuit, it is established that the prosecution is 'not required to prove the exact date; it suffices if a date reasonably near is established.'").

14

No. 17-60285

Mississippi return addresses. Paperwork in Jones's name was also found at that California address, as was a receipt from a Wal-Mart in Mississippi and a flight itinerary for Jones to travel to Mississippi. Based on the evidence linking the cocaine and money found at this California address with Mississippi and the Packages, we conclude that the cocaine, money, and other evidence found at this address was evidence of the conspiracy charged in the indictment. The same is true of the remainder of the California Evidence, which was discovered at apartments that contained drug-dealing equipment, paperwork in Jones's name, and envelopes sent by "Mary Harrison."

As for the Layfair Evidence, Jones contends that the Government failed to establish a connection between him and the items seized at the Layfair Apartment. We disagree. The Government introduced evidence connecting Jones to the Packages, including Jaworowski's identification of Jones as the sender of the Packages. The Government also introduced evidence found at the Layfair Apartment that tends to show that it played a role in a conspiracy that encompassed the mailing of the Packages, including (1) six speaker boxes "identical" to those used in the Packages and (2) a property bag belonging to Beals, the individual who picked up one of the Packages. Accordingly, the speaker boxes, property bag, and other Layfair Evidence—including items associated with drug dealing like scales and wrappings for money—were evidence of the conspiracy charged in the indictment.

Our conclusion that the California and Layfair Evidence is relevant evidence of the conspiracy charged in the indictment requires us to reject Jones's argument that the district court improperly admitted the California and Layfair Evidence. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but "may be admissible for another purpose, such as proving motive,

opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[26] Rule 404(b) is not implicated by evidence introduced to show that the defendant committed the substantive elements of the charged offense, as such evidence is neither evidence of an "other act" nor introduced "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[27] As we have previously stated, "all the government need do [to show that Rule 404(b) does not apply] is suggest a logical hypothesis of the relevance of the evidence for a purpose other than to demonstrate [the defendant's] propensity to act in a particular manner."[28] As discussed, the Government has put forth a sufficient theory as to how the California and Layfair Evidence is evidence of the conspiracy charged in the indictment. Accordingly, the district court did not err by admitting the California and Layfair Evidence. To the extent the district court admitted evidence for only the purposes listed in Rule 404(b), that did not prejudice Jones.

Our decision that the California and Layfair Evidence relates to the conspiracy charged in the indictment also requires us to reject Jones's argument that its admission resulted in a constructive amendment to the

---

[26] FED. R. EVID. 404(b).
[27] *Id.*; *United States v. Krezdorn*, 639 F.2d 1327, 1332 n.8 (5th Cir. Unit A Mar. 1981) (explaining that Rule 404(b) does not exclude evidence of events that form "part of the charged crime"); *see also United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003) ("Rule 404(b), however, does not apply to evidence that itself is probative of the crime charged, without regard to whether any 'other act' occurred."); *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999) ("Direct or intrinsic evidence of the crime charged does not fall within the ambit of [Rule 404(b)]."); *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged.").
[28] *United States v. Lucas*, 516 F.3d 316, 347 (5th Cir. 2008) (alterations in original) (quoting *United States v. Krout*, 66 F.3d 1420, 1431 (5th Cir. 1995)).

No. 17-60285

indictment. We review constructive amendment claims de novo.[29] The Due Process Clause prevents indictments from being "broadened through amendment except by the grand jury itself."[30] A constructive amendment occurs when the evidence introduced at trial broadens an indictment by permitting a jury "to convict on an alternative basis permitted by the statute but not charged in the indictment."[31] Because the California and Layfair Evidence is evidence of the conspiracy charged in the indictment, its introduction did not permit the jury to convict on an alternative basis not charged in the indictment and consequently did not result in a constructive amendment.

## B

Second, we conclude that a reasonable juror would not have understood the district court's Rule 404(b) instruction to apply to the California and Layfair Evidence. The district court instructed the jury that it "ha[d] heard evidence of acts and actions of the defendant which may be similar to those charged in the indictment but which were committed on other occasions." It instructed the jury that it "must not consider any of *this evidence* in deciding if the defendant committed the acts charged in the indictment" but could consider "this evidence" for some of the specific purposes set forth in Rule 404(b).[32] However, the district court never instructed the jury that the California and Layfair Evidence was "evidence of acts and actions of the defendant which may [have] be[en] similar to those charged in the indictment but which were committed on other occasions."

---

[29] *United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012) (citing *United States v. McMillan*, 600 F.3d 434, 450 (5th Cir. 2010)).

[30] *Stirone v. United States*, 361 U.S. 212, 215-16 (1960).

[31] *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. Broadnax*, 601 F.3d 336, 340 (5th Cir. 2010)).

[32] *See* FED. R. EVID. 404(b)(2).

17

Thus, the question before us is whether a reasonable juror would have understood the California and Layfair Evidence to be evidence of acts similar to those charged in the indictment but committed on other occasions—not evidence of the charged crime itself—without the benefit of an instruction specifically saying as much. If a reasonable juror would have understood the California and Layfair Evidence as evidence of the conspiracy charged in the indictment, he would not have understood the district court's Rule 404(b) instruction to apply to the California and Layfair Evidence.

The evidentiary connections between the Packages and the California and Layfair Evidence discussed above require us to conclude that a reasonable juror would have considered the California and Layfair Evidence to be evidence of the conspiracy charged in the indictment. The California Evidence includes cocaine, cash, drug-dealing equipment, an envelope sent under the name of the company to whom the Packages were addressed, envelopes with Mississippi return addresses, a receipt from a Wal-Mart in Mississippi, a flight itinerary for a trip to Mississippi, and paperwork in the name of the man who was identified as the sender of the Packages. The Layfair Evidence includes speaker boxes "identical" to those used in the Packages and a property bag belonging to Beals, the individual who picked up one of the Packages. The many connections between this evidence and the Packages themselves, which were mailed from California to Mississippi, would cause a reasonable juror to consider the California and Layfair Evidence to be evidence of the conspiracy charged in the indictment, not some other, similar conspiracy. Further, as explained above, the California and Layfair Evidence could be evidence of the crime charged in the indictment even though it was discovered outside of Rankin County or after June 9, 2008. Accordingly, the instructions the district court gave—which did not specify that the California and Layfair Evidence was "other act" evidence—permitted the jury to consider the California and Layfair

No. 17-60285

Evidence as evidence of guilt in chief. The district court did not limit the jury's consideration of that evidence to the purposes laid out in Rule 404(b).

This conclusion bears directly on the question of whether the jury based its verdict on sufficient evidence. Because Jones properly preserved this issue by moving for a judgment of acquittal on the basis of insufficient evidence at the close of the Government's case and at the close of all evidence, we review de novo.[33] "In deciding whether the evidence was sufficient, we review all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt."[34] To support a conviction under count one of the indictment, the Government was required to prove: (1) an agreement to possess with intent to distribute cocaine; (2) that Jones knew of the unlawful purpose of the agreement; (3) that Jones joined in the agreement willfully or with the intent to further its unlawful purpose; and (4) that the overall scope of the conspiracy involved at least five kilograms of cocaine.[35]

Jones contends that there was insufficient evidence that the charged conspiracy involved five kilograms of cocaine. Having decided (1) that the California and Layfair Evidence should have been admitted as evidence of the crime charged and (2) that the jury was never instructed not to consider that evidence for purposes of guilt, we will consider the California and Layfair Evidence when making our determination as to whether a rational trier of fact

---

[33] *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007) (citing *United States v. Penaloza-Duarte*, 473 F.3d 575, 579 (5th Cir. 2006)).

[34] *Id.*

[35] *See United States v. Turner*, 319 F.3d 716, 721-22 (5th Cir. 2003) (citing *United States v. DeLeon*, 247 F.3d 593, 596 (5th Cir. 2001)); *United States v. Peters*, 283 F.3d 300, 307 (5th Cir. 2002) (citing *United States v. Quiroz–Hernandez*, 48 F.3d 858, 866 (5th Cir. 1995)).

19

No. 17-60285

could have found that the evidence established that the conspiracy involved at least five kilograms of cocaine beyond a reasonable doubt.[36]  This settles the issue, as the California Evidence includes approximately ten kilograms of cocaine found at one of the California addresses.  Viewing this evidence in the light most favorable to the verdict, as well as the evidence concerning the four kilograms of cocaine contained in the Packages themselves, a rational trier of fact could have found that the conspiracy at issue involved more than five kilograms of cocaine.

Jones also contends that there is insufficient evidence that he knowingly participated in the charged conspiracy.  This contention is easily rejected.  Circumstantial evidence of a conspiracy is sufficient,[37] and the large amount of direct and circumstantial evidence suggesting that Jones mailed the Packages and that Beals received them pursuant to an ongoing scheme is sufficient to allow a rational trier of fact to conclude that Jones knowingly participated in the conspiracy at issue.

### C

Jones's final argument concerning the California and Layfair Evidence is that he is entitled to a new trial because the Government committed prosecutorial misconduct by relying on the California and Layfair Evidence as direct evidence of guilt in its closing argument.  Because we determined that the California and Layfair Evidence is evidence of the conspiracy charged in the indictment, it was not improper for the prosecutor to rely on it as direct evidence of guilt.  Accordingly, the Government did not commit prosecutorial misconduct.[38]

---

[36] See Weeks v. Angelone, 528 U.S. 225, 234 (2000) (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)) ("A jury is presumed to follow its instructions.").

[37] United States v. Mendoza, 226 F.3d 340, 343 (5th Cir. 2000) (citing United States v. Gonzales, 79 F.3d 413, 423 (5th Cir. 1996)).

[38] See United States v. Gallardo-Trapero, 185 F.3d 307, 320 (5th Cir. 1999).

## V

Jones also takes issue with the timing of the district court's decisions on his motions to suppress the Packages and to exclude the California and Layfair Evidence. He argues that his conviction must be vacated because the district court violated his rights to due process and a fair trial by failing to rule on those motions before trial in accordance with Federal Rule of Criminal Procedure 12. Jones filed his motions to suppress and exclude prior to the start of trial, but the district court held those motions in abeyance until trial. Before presenting its second witness, Detective Logrecco, the Government informed the court that it expected Logrecco to provide testimony that was covered by Jones's motions to suppress and exclude and suggested that the district court decide those motions before moving forward. Jones's counsel stated that he "would like to . . . not argue the motions until Inspector Kay has testified so that the court has the full understanding of his testimony before we go into them." Despite Jones's counsel's request, the district court decided to hear argument on the merits of the motions to exclude at that time. After considering the parties' arguments, the district court took the admissibility of the Layfair Evidence under advisement and stated "[a]s to the other evidence, I'm going to let you bring that in." The district court did not state whether the California Evidence was being admitted under Rule 404(b).

After Logrecco finished testifying, the district court again considered hearing arguments on the motions to suppress, but Jones's counsel again requested a delay until after Kay's testimony. The district court agreed and recessed for the evening. The next day, the Government called five more witnesses, including Kay, then rested. After the Government rested, the district court held oral argument on the motions to suppress the Packages and denied them. The district court also heard more argument on the motion to exclude the Layfair Evidence, but decided to consider the issue further and

21

No. 17-60285

make its ruling the next morning. The next morning, Jones made additional arguments in favor of his motions to suppress and exclude. The district court considered Jones's arguments and denied the motions to exclude, deciding to give a general 404(b) instruction.

Jones now contends that the timing of the district court's rulings violated Federal Rule of Criminal Procedure 12 and "was highly prejudicial because it was impossible for [him] to determine from moment to moment during trial what evidence would be admitted and for what purpose." Rule 12 requires a district court to "decide every pretrial motion before trial unless it finds good cause to defer a ruling."[39] We review the timing of a judge's decision on an evidentiary motion for abuse of discretion.[40] Trial court judges do not abuse their discretion when they wait to decide a motion until after hearing possibly relevant evidence scheduled to be presented at trial.[41] Accordingly, the district court did not abuse its discretion by waiting to rule on the pretrial motions until after testimony was introduced at trial concerning the Packages, the California addresses, and the Layfair Apartment. The district court also did not abuse its discretion when it granted Jones's request to defer consideration of the motions until after Kay's testimony, nor can Jones complain about any prejudice that resulted from that decision. The timing of the district court's decision on Jones's pretrial motions to exclude and suppress does not justify vacating Jones's conviction.

## VI

Jones argues that the district court erred by denying his motion to dismiss the indictment because his right to due process was violated when the

---

[39] FED. R. CRIM. P. 12(d).

[40] *United States v. Peters*, 283 F.3d 300, 312 (5th Cir. 2002).

[41] *United States v. Collins*, 491 F.2d 1050, 1052 (5th Cir. 1974) (citing *United States v. Covington*, 395 U.S. 57 (1967); *see also United States v. Valdobino-Pineda*, 141 F. App'x 293, 295 (5th Cir. 2005) (per curiam).

No. 17-60285

Government destroyed the cocaine seized from the Packages and the California address and Agent Still's notes concerning the parcel lineup for the canine identification. This court reviews the district court's denial of a motion to dismiss an indictment de novo[42] and its underlying factual findings for clear error.[43]

Regardless of whether the Government acted in bad faith, the failure to preserve material exculpatory evidence violates a defendant's right to due process.[44] "However, failure to preserve merely potentially useful evidence does not constitute a denial of due process absent a showing of bad faith."[45] Material exculpatory evidence is evidence that "possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[46] Further, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[47] "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[48]

Jones argues that the cocaine found in the Packages and at the California address was materially exculpatory. However, the cocaine did not have any exculpatory value that was "apparent before [it] was destroyed."[49] The cocaine was tested on multiple occasions and tested positive for cocaine

---

[42] *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citing *United States v. Kay*, 513 F.3d 432 (5th Cir. 2007)).

[43] *Id.* (citing *United States v. Hamm*, 659 F.2d 624, 637 (5th Cir. Unit A Oct. 1981)).

[44] *Id.* (citing *Illinois v. Fisher*, 540 U.S. 544, 547 (2004)).

[45] *Id.* (citing *United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006)).

[46] *California v. Trombetta*, 467 U.S. 479, 489 (1984).

[47] *Moore*, 452 F.3d at 387.

[48] *Id.* at 387-88 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

[49] *Trombetta*, 467 U.S. at 489.

23

No. 17-60285

every time. While there were small differences in weight in different measurements, those differences did not render the cocaine itself materially exculpatory.

Assuming that the destroyed cocaine was "potentially useful evidence," the Government's decision to destroy it only violated Jones's right to due process if that decision was made in bad faith.[50] We review a district court's determination as to whether evidence was destroyed in bad faith for clear error.[51] The district court concluded that the Government did not destroy the cocaine in bad faith, stating "[t]here's no evidence here whatsoever that there was bad faith. Contrarily, there's evidence that the destruction was due to protocol promulgated by the postal service." That factual conclusion was not clearly erroneous in light of Inspector Kay's testimony that the cocaine was destroyed pursuant to a USPIS policy that applied because Jones was a fugitive and the USPIS did not think that he was likely to be arrested. The destruction of the cocaine did not violate Jones's right to due process.

Jones also argues that, due to "numerous inconsistencies" regarding the parcel lineup and the search of the Packages, Still's notes from the parcel lineup were apparently materially exculpatory and should not have been destroyed. However, Jones provides no evidence suggesting that the notes contain exculpatory material, or an indication that the exculpatory value of the notes was apparent at the time of their destruction. Likewise, Jones provides no support for his assertion that the result of his trial would have been different if Still's notes had been available, an assertion that is especially dubious considering Kay's testimony about the parcel lineup. Jones has also provided no evidence that the notes were destroyed in bad faith. Accordingly,

---

[50] *United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010) (citations omitted).
[51] *Id.* at 868-69 (citing *United States v. Gibson*, 963 F.2d 708, 711 (5th Cir. 1992)).

No. 17-60285

Jones has not demonstrated that the destruction of Still's notes violated his right to due process. The district court properly denied Jones's motion to dismiss.

## VII

Jones argues that his rights under the Confrontation Clause of the Sixth Amendment were violated when the Government introduced testimonial statements made by Agent Still and co-defendant Pedro Phillips without calling either as a witness. "The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'"[52] The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[53] "[A] non-testifying witness's out-of-court statement, including a co-defendant's confession, that facially incriminates a defendant violates the defendant's Sixth Amendment right to confrontation, even when the jury is instructed not to consider the prior statements as evidence against the defendant."[54] However, "[o]ut-of-court statements of a non-testifying witness that only inferentially incriminate a defendant when linked to other evidence introduced at trial do not violate the Sixth Amendment because an instruction not to consider such a statement will be considered effective to remove it from the jury's consideration."[55] "Alleged violations of the

---

[52] *United States v. Harper*, 527 F.3d 396, 401 (5th Cir. 2008) (quoting *Cruz v. New York*, 481 U.S. 186, 189 (1987)).

[53] *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

[54] *Harper*, 527 F.3d at 403.

[55] *Id.*

No. 17-60285

Confrontation Clause are reviewed *de novo*, but are subject to a harmless error analysis."[56]

Jones takes issue with the introduction of search warrant returns and affidavits that include testimonial statements from Still concerning when the parcel lineup occurred and when the search warrants were executed. For example, Inspector Kay's affidavit recounts that Still used his canine in the package lineups and "stated [the canine] alerted to the odor of narcotics emanating from the packages." Still did not appear at trial, nor did Jones have a previous opportunity to cross-examine him. The Government argues that no Confrontation Clause violation occurred because Jones had the opportunity to cross-examine Kay, who personally witnessed the canine alert to the Packages and was the affiant for the warrant in question. However, as Jones points out, Kay merely observed Still conduct the parcel lineup and testified that he "[did not] know the policies and procedures that [Still] does with his dog."

Even so, the introduction of Still's testimonial statements was harmless and thus did not violate the Confrontation Clause. Even if Jones had been able to cross-examine Still in a manner that convinced the jury not to credit the canine alert, the jury still would have heard evidence that the substance in the Packages tested positive for cocaine. The test results are far more persuasive evidence that the Packages contained cocaine than Still's testimonial statements. Accordingly, the introduction of Still's testimonial statements did not violate Jones's rights under the Confrontation Clause.

Jones also takes issue with Kay's testimony about the information that Kay learned from Phillips. During his direct examination, Kay explained that Phillips told him that Phillips and Beals had used the false name "Horace

---

[56] *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004) (citing *United States v. McCormick*, 54 F.3d 214, 219 (5th Cir. 1995)).

Hampton" to procure the rental boxes to which the cocaine was delivered. Immediately after that testimony, the district court instructed the jury that Phillips's statements had been introduced to explain the manner in which Kay conducted the investigation and should not be considered when deciding whether the Government had proved its case. Shortly thereafter, the district court asked Kay to clarify how he connected Beals to the Mississippi apartment. Kay responded that Phillips told Kay that he was working for Beals and that his role was to receive keys for the box, pick up packages, and take them to the Layfair Apartment. Immediately after this exchange, the district court again instructed the jury that the testimony could be considered "as to what caused Mr. Kay to take further action . . . but it may not be considered . . . in deciding whether the government has proved its case beyond a reasonable doubt." Phillips did not appear at trial, and Jones did not have a previous opportunity to cross-examine him.

Nevertheless, because Phillips did not name Jones or directly implicate him in any way, his testimony is not facially incriminating but "inferentially incriminat[ing] . . . when linked to other evidence introduced at trial."[57] Consequently, Kay's recollection of Phillips's testimonial statements did not violate the Sixth Amendment as the district court instructed the jury not to consider Kay's statements when determining whether the Government had proved its case.[58]

## VIII

The final issue that Jones raises with his trial concerns the jury instructions. Jones argues that the district court erred by refusing to give two of his requested jury instructions. This court reviews a district court's refusal

---

[57] *United States v. Harper*, 527 F.3d 396, 403 (5th Cir. 2008).
[58] *See id.* at 403 (providing that "an instruction not to consider such statement[s] will be considered effective to remove it from the jury's consideration").

No. 17-60285

to give a requested jury instruction for abuse of discretion.[59]  The district court will be reversed only if: "(1) the requested instruction is substantially correct; (2) the requested instruction was not substantially covered in the charge as a whole; and (3) the omission of the requested instruction 'seriously impaired the defendant's ability to present a given defense.'"[60]

Jones asked the district court to include language derived from the pattern jury instruction regarding constructive possession in its jury instruction on possession.  Jones edited the pattern instruction to address his concerns that the jury could find that he possessed the "drug related evidence . . . found in locations occupied by other individual[s]" even though, in his opinion, "no proof was offered that [he] actually possessed or even knew of the alleged drugs and drug related evidence."  Jones argues that "[a]dditional proof of knowledge was required, so the [proposed] instruction was a correct statement of the law."

The constructive possession instruction the district court gave sufficiently addressed Jones's concern that the jury could conclude that he possessed drugs about which he had no knowledge.  The district court's instruction defined constructive possession as "knowingly ha[ving] both the power and the intention at a given time to exercise dominion or control over a thing either directly or through someone else."  By specifying that constructive possession requires a defendant to "knowingly" have the requisite power and the intention, the district court's instruction substantially covered the knowledge component of constructive possession.  Accordingly, the district court did not abuse its discretion by declining to give the exact constructive possession instruction Jones requested.

---

[59] *United States v. Mata*, 491 F.3d 237, 241 (5th Cir. 2007) (citing *United States v. Thomas*, 12 F.3d 1350, 1365 (5th Cir. 1994)).

[60] *Id.* (quoting *United States v. Cain*, 400 F.3d 672, 674 (5th Cir. 2006)).

No. 17-60285

The district court also rejected Jones's request for an instruction that evidence that Jones was a law-abiding citizen could give rise to reasonable doubt. Jones argues that a law-abiding-citizen instruction was required because he claimed his innocence on the stand and testified to his own law-abiding character. The omission of the instruction did not impair Jones's ability to present his defense. A character instruction is unnecessary unless character evidence is central or crucial to the defendant's theory of the case.[61] In *United States v. John*, we held that character evidence is "a vital part of [a] defense" in "narrow circumstances."[62] Specifically, character evidence is crucial when the "only evidence linking the defendant to the crime is the victim's word."[63] The jury in *John* had to decide whether to believe the defendant or the victim, who presented the only evidence connecting the defendant to the crime.[64] Accordingly, the character of both witnesses was the central issue in the case. Here, conversely, the jury was not forced to evaluate a "swearing-match" between competing parties,[65] as the Government presented substantial evidence linking Jones to the conspiracy.

Additionally, the district court adequately instructed the jury as to its responsibility to evaluate the credibility of a witness's testimony. The district court instructed that it was "the sole judges of the credibility or believability of each witness and the weight to be given to the witness's testimony" and that "[a]n important part of [its] job w[ould] be making judgments about the testimony of the witnesses including the defendant." If the district court's decision not to give a law-abiding-citizen instruction resulted in any

---

[61] *See United States v. John*, 309 F.3d 298, 304 (5th Cir. 2002) (citing *United States v. Baytank (Hous.), Inc.*, 934 F.2d 599, 614 (5th Cir. 1991)).

[62] *Id.* at 305.

[63] *Id.*

[64] *Id.*

[65] *See id.*

29

No. 17-60285

impairment of Jones's ability to present his defense, such a result was sufficiently mitigated by the district court's instruction to consider "the credibility or believability of each witness." Accordingly, the district court did not abuse its discretion by denying Jones's proposed law-abiding-citizen instruction.

## IX

Finally, Jones contends that, if his conviction is not overturned, his sentence should be vacated because his sentence is both procedurally and substantively unreasonable. We review sentencing decisions for reasonableness in two steps.[66] First, we determine whether the district court committed any procedural errors,[67] such as an error performing the calculations required by the United States Sentencing Guidelines (USSG).[68] When determining whether the district court made any procedural errors, this court reviews the district court's interpretation and application of the USSG de novo and its factual findings for clear error.[69] In making factual findings, "the district judge may consider any information that has 'sufficient indicia of reliability to support its probable accuracy,' including a probation officer's testimony, a policeman's approximation of unrecovered drugs, and even hearsay."[70] If there is no procedural error or the procedural error is harmless, we proceed to review the substantive reasonableness of the sentence for abuse of discretion.[71]

---

[66] *United States v. Groce*, 784 F.3d 291, 294 (5th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

[67] *Id.* (citing *Gall*, 552 U.S. at 51).

[68] *United States v. Dunigan*, 555 F.3d 501, 504 (5th Cir. 2009).

[69] *Groce*, 784 F.3d at 294 (quoting *United States v. Scott*, 654 F.3d 552, 555 (5th Cir. 2011)).

[70] *United States v. Betancourt*, 422 F.3d 240, 247 (5th Cir. 2005) (quoting *United States v. Huskey*, 137 F.3d 283, 291 (5th Cir. 1998)).

[71] *Groce*, 784 F.3d at 294 (citing *United States v. Delgado-Martinez*, 564 F.3d 750, 754 (5th Cir. 2009)).

No. 17-60285

Jones contends that the district court made two procedural errors at sentencing. The first, according to Jones, was determining that his base offense level was thirty-four because his criminal activity involved at least fifty kilograms of cocaine. Jones contends that the district court's factual finding concerning the amount of cocaine involved was erroneous because it was based on "unreliable and uncorroborated" estimates.

However, as the Government points out, the Presentence Report (PSR) contained sufficient evidence supporting the district court's conclusion. "[A]s a general rule, information in the pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate, or unreliable."[72] The PSR identified the following drug amounts:

1. approximately four kilograms of cocaine in the Packages;
2. approximately ten kilograms of cocaine seized from the California address;
3. approximately $400,000 cash that was seized at the California address and converted to cocaine at $14,000 per kilogram for a total of approximately twenty-eight kilograms; and
4. thirteen packages discussed by Phillips, "each containing two pounds of cocaine," for a total of approximately twelve kilograms.

Accepting the information in the PSR, the conspiracy at issue involved approximately fifty-four kilograms of cocaine. Jones has not demonstrated by competent evidence that any of the information in the PSR related to the quantity of cocaine involved is materially untrue, inaccurate, or unreliable. Accordingly, the district court's factual finding that Jones's criminal activity involved more than fifty kilograms of cocaine was not clearly erroneous.

---

[72] *United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016) (quoting *United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002)).

No. 17-60285

The second procedural error alleged by Jones is the district court's decision to impose a four-level leadership-role enhancement under USSG § 3B1.1(a). Section 3B1.1(a) of the 2007 Sentencing Guidelines, which the parties agree control, states, "If the defendant was an organizer or leader of a criminal activity that . . . was . . . extensive, increase by 4 levels."[73]

Even if the district court's decision to impose the leadership-role enhancement was erroneous, we will not vacate the sentence if that error was harmless and the district court's sentence was substantively reasonable.[74] At sentencing, the district court stated:

> I hasten to say that whether this court has accurately made a determination vis-a-vis the guidelines or has not, the sentence would be the same. Now, the gravity of this crime is alarming and frightening to me, and it's also instructive as to all of the dangerous and life-threatening drugs that are being disseminated throughout our society.

The district court also explicitly stated that Jones's sentence "could arguably not be enough, taken into consideration the extent of this drug activity, the fact that this man was obviously a drug dealer, he'd been on the lam for a long time, and all of the other facts and circumstances which the court faces." The district court's statements at trial establish that it would have imposed the same sentence even if it had not applied the leadership-role enhancement. Accordingly, the district court's decision to apply the leadership-role enhancement was harmless, and the court will not vacate Jones's sentence if it was substantively reasonable.[75]

---

[73] U.S. Sentencing Guidelines Manual § 3B1.1(a) (U.S. Sentencing Comm'n 2007).

[74] See United States v. Groce, 784 F.3d 291, 294 (5th Cir. 2015) (citing United States v. Delgado-Martinez, 564 F.3d 750, 754 (5th Cir. 2009)).

[75] See United States v. Sanchez, 850 F.3d 767, 769-70 (5th Cir. 2017); United States v. Shepherd, 848 F.3d 425, 427 (5th Cir. 2017).

No. 17-60285

The district court's sentence of 360 months in prison was substantively reasonable. If the district court had not imposed the four-level leadership-role enhancement, Jones's offense level would have been thirty-six, not forty, and his sentencing range would have been 188 to 235 months in prison.[76] While the district court's sentence was more than one and a half times the high end of this range, that discrepancy alone does not warrant vacating the sentence. Rather, we review the substantive reasonableness of a district court's sentence—even a sentence outside the properly calculated guideline range— for abuse of discretion, keeping in mind the district court's statutory obligation to comply with 18 U.S.C. § 3553.[77] We apply this "highly deferential" standard of review "because the sentencing court is in a better position to find facts and judge their import under the § 3553(a) factors with respect to a particular defendant."[78] "[A] non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors."[79]

The district court justified its sentence by referencing "the gravity of [Jones's] crime," the amount of "dangerous and life-threatening drugs" involved, "the fact that . . . [Jones had] been on the lam for a long time, and all of the other facts and circumstances which the court faces." Jones does not argue that the district court failed to account for a § 3553(a) factor that would suggest a lighter sentence. Jones also does not specifically contend that the

---

[76] See U.S. SENTENCING GUIDELINES MANUAL, Ch. 5, Pt. A. (U.S. SENTENCING COMM'N 2007).

[77] United States v. Pillault, 783 F.3d 282, 288 (5th Cir. 2015).

[78] Id. (quoting United States v. Hernandez, 633 F.3d 370, 375 (5th Cir. 2011)).

[79] United States v. Fraga, 704 F.3d 432, 440 (5th Cir. 2013) (quoting United States v. Smith, 440 F.3d 704, 708 (5th Cir. 2006)).

No. 17-60285

district court gave significant weight to an improper or irrelevant factor or erroneously balanced the sentencing factors.

The facts that the district court cited to justify its sentence were neither irrelevant nor improperly considered. Section 3553(a) instructs sentencing courts to consider "the seriousness of the offense."[80] The district court did so when it consider "the gravity of [Jones's] crime" and the amount of drugs involved. Section 3553(a) also instructs sentencing courts to consider "the history and characteristics of the defendant."[81] The five years that Jones spent evading arrest are part of his history and therefore were properly considered.[82] Further, sentencing courts may consider the time that a defendant spent as a fugitive when fulfilling their mandate under § 3553(a)(2)(B) to "consider the need for the sentence imposed to afford adequate deterrence to criminal conduct."[83]

Having concluded that the factors relied on by the district court were appropriate, we cannot say that the district court made a clear error of judgment when, after balancing those factors and the other § 3553(a) factors,

---

[80] 18 U.S.C. § 3553(a)(2)(A).

[81] *Id.* § 3553(a)(1).

[82] *See United States v. Grant*, 337 F. App'x 385, 386 (5th Cir. 2009) (affirming the district court's decision to impose a sentence that was seventy-eight months above the advisory guideline maximum sentence of 162 months where the district court cited the defendant's "fugitive status" as one justification for the upward departure); *see also United States v. Buchanan*, 638 F.3d 448, 455 (4th Cir. 2011) (A defendant's "conduct while a fugitive will be considered at sentencing."); *United States v. Mahamoud*, 99 F. App'x 439, 441-42 (3d Cir. 2004) (concluding that a district court's above-guidelines sentence was substantively reasonable where the district court found that the time that the defendant spent as a fugitive was relative to his "history and characteristics" and therefore properly considered under § 3553(a)).

[83] 18 U.S.C. § 3553(a)(2)(B); *see United States v. Hallahan*, 756 F.3d 962, 982 (7th Cir. 2014) (quoting *United States v. Elliott*, 467 F.3d 688, 691 (7th Cir. 2006) ("[T]he law's deterrent and retributive effect can be maintained, in the event of prolonged fugitive status, only by substantial incremental penalties."); *Elliott*, 467 F.3d at 691 ("How long the fugitive remains on the lam is vital to assessing the deterrent effect of a sentence . . . .").

34

No. 17-60285

it imposed a sentence of 360 months.  The district court did not abuse its discretion by imposing an unreasonable sentence.

\*       \*       \*

For the foregoing reasons, we AFFIRM the district court's judgment.